**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **SEAN GLENNON,** | : | **Civil Action No.: 10-0324 (JAP)** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **MEMORANDUM OPINION** |
| | : | **AND ORDER** |
| **WING ENTERPRISES, INC., et al.,** | : | |
| | : | |
| **Defendants.** | : | |
| _____ | : | |

**ARPERT, U.S.M.J**

## I.      INTRODUCTION

This matter having come before the Court on a Motion by Plaintiff Sean Glennon ("Plaintiff") to compel destructive testing of the ladder which is the subject of this action, responses to requests for production, answers to interrogatories, and other miscellaneous relief [dkt. entry. no. 11], and on a Cross-Motion by Defendant Wing Enterprises ("Defendant") to strike Plaintiff's Motion, bifurcate proceedings on liability and damages, and permit a limited deposition of Plaintiff's expert to evaluate the need for destructive testing [dkt entry. no. 15], returnable November 15, 2010. Defendant filed its opposition and Cross-Motion on November 1, 2010. Plaintiff filed his reply on November 8, 2010. For the reasons stated herein, Plaintiff's Motion is granted in part and denied in part and Defendant's Cross-Motion is denied.

## II.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On or about December 14, 2007, Plaintiff attempted to use a ladder that he had purchased from Defendant at his home in Hillsborough, New Jersey. Plaintiff believes the ladder broke, or "fractured", beneath his feet while he was using it. *See* Pl.'s Br. at 2. As a result, Plaintiff suffered significant injuries.

Plaintiff filed a Complaint in state court on December 3, 2009, which Defendant removed to the United States District Court for the District of New Jersey, alleging that the accident occurred "by reason of the defective [ladder] and negligent manufacture of the [ladder], breach of contract, and further breach of duties owed to Plaintiff by Defendant".   *See* Pl.'s Complaint, ¶ 3, dkt. entry no. 1-1.  On September 14, 2010, Plaintiff brought significant discovery disputes to the attention of the Court by way of letter.  Defendant responded on September 17, 2010.  Based on this exchange it was apparent that the Parties' discovery disputes could not be resolved informally.  As a result, the instant Motion and Cross-Motion were filed.  The Court notes that fact discovery ended on October 29, 2010.

## A.    Plaintiff's Arguments in Support of the Motion to Compel

Plaintiff claims that "(1) he should be permitted to engage in destructive testing of the subject ladder" (Pl.'s Br. at 2); "(2) Defendant has failed to comply with Plaintiff's request for...production of document numbers 4, 9, 10, 11, and 16" (*Id*. at 3); (3) Defendant has failed to provide adequate responses to interrogatory numbers "4, 7, 9, 11, 18, 22-23d" (*Id*. at 6); (4) Defendant has failed to produce a copy of its insurance policy (*Id*. at 8).

### 1.    Plaintiff should be permitted to engage in destructive testing of the subject ladder.

Plaintiff states that he requested that Defendant permit his expert to engage in "destructive testing", but that Defendant "does not consent to destructive testing and cited the opinion of *Mirchandani v. Home Depot USA, Inc*., 235 F.R.D. 611 (D. Md. 2006) to support its argument".  *Id*. at 2.  Plaintiff notes that he retained an expert, John Gashinski, P.E. ("Mr. Gashinski"), to examine the ladder and produce a report setting forth the "protocol by which such testing should occur".  *Id*.

2

Plaintiff reports that Mr. Gashinski "is of the opinion that the ladder may have defects that allow for unexpected failures...and that he cannot determine the cause of the failure without performing a comprehensive metallurgical evaluation". *Id*. In response to Defendant's objections, Mr. Gashinski submitted a supplemental letter reiterating that his "recommended protocol" did "provide a detailed description of what he proposes to do, how he proposes to do it, or why he proposes to do it" and proposed that the parties and experts "could agree on the area to proceed with the destructive testing" in response to Defendant's concerns. *See* dkt. entry no. 8, Ex. I.

Plaintiff argues that the case cited by Defendant "actually supports Plaintiff's argument for destructive testing", as the factors set forth therein all militate in favor of granting Plaintiff's Motion. Plaintiff contends that the protocol proposed by Mr. Gashinski is reasonable, that Mr. Gashinski wishes to test the area where the ladder fractured, and that Mr. Gashinski cannot determine the cause of the break without performing destructive testing as there are no alternative methods available. *See* Pl.'s Br. at 3. Plaintiff claims that because adequate safeguards can be put in place there will be no prejudice to Defendant. Specifically, Plaintiff suggests that Defendant's expert can be present at the destructive testing and both experts can agree on the area of testing or Defendant's expert can be absent and photographs depicting the area of testing can be provided prior to testing so the parties can agree on the area of testing. *Id*.

      **2.**    **Defendant has failed to comply with Plaintiff's request for production of document numbers 4, 9, 10, 11 and 16.**

With respect to document request number 4, Plaintiff admits that there was a "typographical error" in his original notice to produce. *Id*. Specifically, Plaintiff indicated to Defendant by way of letter dated August 23, 2010 that he meant to request "any and all reports rendered by Defendant's

proposed expert witnesses" rather than Plaintiff's.  *Id.*; *see also* dkt. entry no. 8, Ex. K.  Plaintiff

argues that Defendant "took the position that it would not respond without a new formal demand for

production of documents" rather than responding to Plaintiff's letter.  *Id.*; *see also* dkt. entry no. 8,

Ex. L.

With respect to document request number 9, Plaintiff seeks "any documents which represent

any correspondence or communication of any kind with any non-party which relate to the subject

matter of this litigation".  *Id.* at 4; *see also* dkt. entry no. 8, Ex. J, ¶ 9.  Plaintiff notes Defendant's

response states,

> Other than correspondence between the defendant and their litigation
> managers, correspondence between the defendant and their attorney,
> and correspondence between the attorney and defendant's litigation
> manager, no such documents exist.  All such correspondence is
> protected by the attorney client privilege and/or the work product
> doctrine.

*Id.* at 4; *see also* dkt. entry no. 8, Ex. J, ¶ 16 Response.  By way of letter dated August 23, 2010,

Plaintiff responded that he did not believe the outlined correspondence was subject to any sort of

privilege, requested that these documents be produced, and further requested that Defendant comply

with L.Civ.R. 34.1 which "requires a privilege log to be prepared".  *Id.* at 4; *see also* dkt. entry no.

8, Ex. K.  Plaintiff cites *Canadian Imperial Bank of Commerce v. Boardwalk Regency Corp.*, 108

F.R.D. 737 (D.N.J. 1986) and *Torres v. Kuzniasz*, 936 F. Supp. 1201, 1208-1214 (D.N.J. 1996) to

support his contention that "a party asserting the attorney/client privilege must provide...a privilege

log" in order that Plaintiff have the opportunity to review documents exchanged between Defendant

and its litigation manager.  *Id.* at 4.

With respect to document request number 10, Plaintiff admits that there was a "typographical

4

error" in his original notice to produce.  *Id.* at 4.  Specifically, Plaintiff indicated to Defendant by way of letter dated August 23, 2010 that he meant to request "all documents, maps, diagrams, blueprints, land surveys, schematics, sketches, charts, ledgers, invoices and photographs or other visual reproductions in Defendant's possession related to the subject matter of this lawsuit" rather than Plaintiff's.  *Id.*; *see also* dkt. entry no. 8, Ex. K.  Plaintiff argues that Defendant "took the position that it would not respond without a new formal demand for production of documents" rather than responding to Plaintiff's letter.  *Id.*; *see also* dkt. entry no. 8, Ex. L.

With respect to document request number 11, Plaintiff admits that he modified his request by way of letter dated August 23, 2010 to only include "any and all documents [reflecting] how the Little Giant Ladder System Type 1A with Model No. 10126 is manufactured and designed".  *Id.* at 4-5; *see also* dkt. entry no. 8, Ex. K.  Plaintiff argues that Defendant "took the position that it would not respond without a new formal demand for production of documents" rather than responding to Plaintiff's letter.  *Id.*; *see also* dkt. entry no. 8, Ex. L.

With respect to document request number 16, Plaintiff seeks "any and all documents reflecting technical drawings as well as the manufacturer's process that is involved in the fabrication of the ladder system."  *Id.* at 5-6; *see also* dkt. entry no. 8, Ex. J, ¶ 16.  Plaintiff notes Defendant's response states,

> See response to Rule 26 disclosure, which included assembly drawings.  Those drawings identify additional drawings that may be useful to the plaintiff, and which will be produced upon reasonable request by plaintiff.  In the event that the plaintiff seeks all design and manufacturing drawings of the product in questions, this request is voluminous and will be made available, at the defendant's place of business, as maintained in the ordinary course of business.

*Id.* at 5-6; *see also* dkt. entry no. 8, Ex. J, ¶ 16 Response.  By way of letter dated August 3, 2010,

5

Plaintiff advised Defendant that there had been no reference to assembly drawings and that no assembly drawings were attached to Defendant's Rule 26 Disclosures.  *Id*. at 5-6; *see also* dkt. entry no. 8, Ex. K.  Plaintiff maintains that in response, Defendant "advised that no documents were attached to Defendant's Rule 26 Disclosure since no documents are required to be produced under Rule 26", that "Defendant will not produce the design and manufacturer drawings of the product in question", and that these documents "will be made available at Defendant's place of business" in Utah.  *Id*. at 5-6; *see also* dkt. entry no. 8, Ex. N.  Plaintiff maintains that he will "reimburse the Defendant for any photocopying cost" should the Court grant his Motion to produce these documents.  *Id*. at 6.

### 3. Defendant has failed to adequately answer Plaintiff's interrogatory numbers 4, 7, 9, 11, 18, 22-23.

With respect to interrogatory number 4, Plaintiff asks "if defendant has obtained any statements regarding this lawsuit, please attach copies".  *Id*. at 6; *see also* dkt. entry no. 8, Ex. O, ¶ 4.  Plaintiff notes Defendant's response states,

> Objection.  All formal discovery in this matter is equally available to plaintiff.  Other than that discovery, any statement of any witness or potential witness constitutes work product, as any and all such statements, if any, were obtained either immediately before litigation...or after litigation commenced.

*Id*. at 6; *see also* dkt. entry no. 8, Ex. O, ¶ 4 Response.  Plaintiff argues that Defendant fails to "advise whether it has any statements that constitute work product or otherwise" and "requests a responsive answer".  *Id*.

With respect to interrogatory number 7, Plaintiff asks "if any photographs, videotapes, audio tapes or other forms of electronic recording, sketches, reproductions, charts or maps were made with

respect to any thing that is relevant to the subject matter of the complaint, please provide copies".

*Id*. at 6; *see also* dkt. entry no. 8, Ex. O, ¶ 7.  Plaintiff notes Defendant's response states,

> The plaintiff has produced photographs, which are in plaintiff's possession.  Defendant's consulting expert took photographs which are not discoverable.  Discovery is ongoing, and we reserve our right to rely upon any and all such items disclosed in discovery in support of any and all claims and defenses in this lawsuit.

*Id*. at 6-7; *see also* dkt. entry no. 8, Ex. O, ¶ 7 Response.  Plaintiff "does not understand how...expert photographs are not discoverable", as they "were taken by an expert that has been retained by Defendant" and "are of the ladder in question", and requests that Defendant produce these photographs.  *Id*. at 6-7.

With respect to interrogatory number 9, Plaintiff asks "if you contend or intend to contend at the time of trial that the plaintiff sustained personal injuries in any prior or subsequent accident, state the date of said accident, and the injuries you contend plaintiff sustained".  *Id*. at 7; *see also* dkt. entry no. 8, Ex. O, ¶ 9.  Plaintiff notes Defendant's response states,

> Objection.  This interrogatory seeks trial contentions in violation of the work product doctrine.  This notwithstanding, this defendant will require plaintiff to sustain his burden of proving that those injuries claimed to result from this accident were actually sustained at the time and as a result of this accident.

*Id*. at 7; *see also* dkt. entry no. 8, Ex. O, ¶ 9 Response.  Plaintiff argues that "this interrogatory is self explanatory as to whether defendant has any information regarding any other injuries sustained by plaintiff".  *Id*. at 7.

With respect to interrogatory number 11, Plaintiff asks Defendant to "identify all documents that may relate to this action, and attach copies of each such document".  *Id*. at 7; *see also* dkt. entry no. 8, Ex. O, ¶ 11.  Plaintiff notes Defendant's response states,

> Objection.  This request is overly broad and vague.  Without waiving this objection, this defendant has made available for inspection and copying those documents that it believes are relevant to the defense of this product.

*Id*. at 7; *see also* dkt. entry no. 8, Ex. O, ¶ 11 Response.  Plaintiff argues that Defendant has "not identified [these] documents" and requests that Defendant "identify and produce copies of [these] documents".  *Id*. at 7.

With respect to interrogatory number 18, Plaintiff asks Defendant to,

> State whether at any time prior to answering these interrogatories and subsequent to the date of manufacturing or distribution of the product itself or similar products manufactured by this defendant any person alleged or claimed that he, she, or anyone suffered bodily injuries or death as a result of using the product in the manner in which plaintiff claims to have used the product when the injury occurred.  If so, identify all claimants and their attorneys.

*Id*. at 7; *see also* dkt. entry no. 8, Ex. O, ¶ 18.  Plaintiff notes Defendant's response states,

> Objection.  This interrogatory is not reasonably calculated to lead to discoverable information in that plaintiff has supplied no definition or other information to identify what is meant by 'similar products' or 'the manner in which plaintiff claims to have been using the product when the injury occurred'.

*Id*. at 7; *see also* dkt. entry no. 8, Ex. O, ¶ 18 Response.  Plaintiff argues that this interrogatory is related to "the issue of notice as to whether there was any particular defect to this ladder".  *Id*. at 7.

With respect to interrogatory number 22, Plaintiff asks Defendant to "provide records of other complaints within the last 10 years regarding any claims made resulting from latent defects in the welding of the ladder in any section and/or a collapse in the structural integrity of the ladder due to any cause".  *Id*. at 7; *see also* dkt. entry no. 8, Ex. O, ¶ 22.  Plaintiff notes Defendant's response states,

> Objection.  This request is overly broad, unduly burdensome, and not
> reasonably calculated to lead to the discovery of admissible evidence.
> In addition, plaintiff has not defined 'similar products' or 'the manner
> in which plaintiff claims to have been using the product when the
> injury occurred'.

*Id*. at 7; *see also* dkt. entry no. 8, Ex. O, ¶ 22 Response.  Plaintiff disagrees that this request is

"overbroad" and argues that "the records of any complaints regarding this particular ladder due to

welding issues or structural integrity issues...is relevant to this litigation as to whether there was any

particular known defect to this ladder".  *Id*. at 7.

      With respect to interrogatory number 23, Plaintiff asks Defendant to "detail the

manufacturer's processing that is involved in the fabrication of the ladder system including a flow

chart detailing the processing of raw materials to the end product".  *Id*. at 7; *see also* dkt. entry no.

8, Ex. O, ¶ 23.  Plaintiff notes Defendant's response states,

> Objection.  This request is so overly broad and vague that it is
> impossible to respond.  The question as phrased seeks information
> from the receipt of raw material until the transmission of the final
> product, which cannot be reasonably supplied in this format.

*Id*. at 7; *see also* dkt. entry no. 8, Ex. O, ¶ 23 Response.  Plaintiff notes that his "expert specifically

requested technical drawings as well as the manufacturer's processing that is involved in the

fabrication of the ladder system, which includes a flow chart detailing the processing of raw material

to the end product".  *Id*. at 7; *see also* dkt. entry no. 8, Ex. F.  Plaintiff requests that the Court order

Defendant "to produce the information so plaintiff can furnish it to its expert".  *Id*. at 7.

### 4.    Defendant has failed to provide a copy of its insurance policy.

      Plaintiff notes that he "requested the opportunity to review the insurance policy providing

insurance coverage to Defendant for Plaintiff's claim".  *Id*. at 8; *see also* dkt. entry no. 8, Ex. M, ¶

4.  Although Defendant initially "advised that there was no such insurance policy", by way of letter dated October 4, 2010, Defendant "advised that the insurance policy [had] now been obtained" and was "available for review at Defendant's counsel's office".  *Id*. at 8.  Plaintiff requests that the insurance policy "be copied and transmitted to Plaintiff by mail".  *Id*.

### B.  Defendant's Arguments in Opposition to the Motion to Compel and in Support of Plaintiff's Cross-Motion

Defendant advances six (6) arguments in opposition to Plaintiff's Motion and in support of its Cross-Motion.  With respect to Plaintiff's Motion, Defendant claims that "(1) Plaintiff's Motion is procedurally deficient and should be stricken in that Plaintiff failed to file a notice of motion setting forth the relief sought in accordance with FED. R. CIV. P. 7 and corresponding local rules" (Def.'s Opp'n Br. at i); "(2) Plaintiff's application to compel destructive testing of the ladder in question should be denied as Plaintiff has failed to submit a protocol that shows the testing to be integral to Plaintiff's proofs, that contains adequate safeguards that protect Defendant's interests, and that obtains the information Plaintiff requires in the least destructive means" (*Id*. at ii) but, if the Court disagrees, Defendant requests that it "be allowed to conduct a limited deposition of Mr. Gashinski to evaluate his need to test and his proposed methodology under the *Mirchandani* standard" (*Id*. at 12); "(3) Plaintiff's Motion to compel more specific responses to Plaintiff's notice to produce should be denied as Defendant has supplied responsive answers, all documents that Defendant can discern as relevant based on Plaintiff's allegations have been made available, Plaintiff has not demonstrated that any further production would be relevant, and Plaintiff's requests are unduly prejudicial to Defendant" (*Id*. at i); "(4) Plaintiff's Motion to compel more specific answers to interrogatories should be denied as Plaintiff has not shown a basis for this relief and Defendant

properly answered or objected to each disputed question" (*Id* at i); and "(5) assuming, *arguendo*, that this Court strikes or denies Plaintiff's Motion...it is respectfully submitted that Plaintiff's delay in seeking the discovery requested warrants no further extensions of discovery" (*Id*. at ii).  With respect to Defendant's Cross-Motion, Defendant states "(6) assuming, *arguendo*, that this Court affords Plaintiff additional time, the Court is respectfully requested to bifurcate proceedings and try liability issues before permitting further damages discovery to expedite and economize the proceedings". *Id*. at ii.

### 1.    Plaintiff's Motion is procedurally deficient and should be stricken.

Citing FED. R. CIV. P. 7(b), FED. R. CIV. P. 10, L.CIV.R. 10.1, and *United States Small Business Administration v. Klein*, 2009 WL 1457119, at *2 (D.N.J. 2009), Defendant maintains that Plaintiff's Motion should be stricken for failing to comply with procedural requirements such as stating "with particularity the relief sought and the grounds therefor" and having "a caption and separately numbered paragraphs stating the basis for the requested relief".  *Id*. at 5-6.  Defendant argues that the defects in Plaintiff's Motion are "not a mere matter of form", as they "require both counsel for Defendant and the Court to divine the legal basis for the motion and the relief sought". *Id*. at 6.  Defendant asserts that it "should not be subjected to an adverse ruling without Plaintiff properly stating his position...so that Defendant can completely and properly respond".  *Id*.

### 2.    Plaintiff's application to compel destructive testing of the ladder should be denied.

Defendant states that it is "objecting to destructive testing because Plaintiff has not demonstrated the need for destructive testing or adequate safeguards for the evidence".  *Id*. at 7. Defendant claims that "Plaintiff refused" to "explain what he hopes to obtain from his proposed

testing and a protocol that details how the tests will be done while maintaining appropriate evidentiary safeguards", and further asserts that "if Plaintiff supplied this protocol, Defendant may not object to it...or may be able to propose less destructive methods of obtaining the same information". *Id.* Defendant, stating that Plaintiff "proposes that the experts meet to perform the tests and then determine how to proceed", argues that a "let's see what happens while we destroy the evidence approach does not meet the requirements for destructive testing". *Id.* "If plaintiff proffered the evidence he reasonably expects to obtain, and that evidence was relevant to this case, ...Defendant could review the protocol and determine (1) whether the protocol is reasonable and necessary for obtaining the evidence, (2) whether the proposed testing is likely to obtain the desired evidence, and (3) whether a less destructive method of testing exists". *Id.* at 7-8.

Citing *Mirchandani v. Home Depot, U.S.A., Inc.*, 235 F.R.D. 611, 614 (D. Md. 2006), *White v. Cooper Tools, Inc.*, 2010 WL 1418244, at *2-3 (D.S.D. 2010), *Conway v. Katz, Inc.*, 2009 WL 3698561, at *2 (E.D. Mich. 2009), *Guerrero v. General Motors Corp.*, 2007 WL 3203014, at *2 (E.D. Ca. 2007), *Electro-Methods, Inc. v. Adolf Meller Co.*, 2007 WL 470325, at *1-2 (D. Conn. 2007), and 7 James W. Moore, Moore's Federal Practice, §34.14[6], at 34-82 (3d. Ed. 2004), Defendant argues that "Plaintiff must show that his desired tests are reasonable and necessary, there are no less destructive means of obtaining the desired evidence, and his protocol contains adequate safeguards to protect Defendant's interests". *Id.* at 8-9. Defendant maintains that "Plaintiff agreed to supply this information" but has failed to do so. *Id.* at 9. Defendant further maintains that Plaintiff's expert, Mr. Gashinski, "clearly opined that the fracture is a sheer overload fracture that occurred catastrophically" and, therefore, "testing is not necessary to prove Plaintiff's case if his expert has already concluded how the fracture occurred" as the evidence is not "integral". *Id.*

12

Defendant maintains that "there has been no proffer to this Court or to Defendant as to the purpose of any test", and, therefore, "neither Defendant nor the Court can...determine whether and to what extent any evidence that testing generates is necessary for Plaintiff's case, weigh this against the prejudice to Defendant from destroying the ladder, and determine whether there is a less-destructive way of obtaining the same result". *Id*. at 10.  Specifically, Defendant claims that if Mr. Gashinski "wants tests for an engineering purpose, he has never stated what evidence he expects to obtain, why he believes his testing will generate this evidence, or how his proposed tests will produce relevant evidence".  *Id*.  Defendant admits that Mr. Gashinski wrote a letter that demonstrates the need for a specific protocol, but claims that the letter "was not supplied to Defendant".  *Id*.  Defendant argues that Mr. Gashinski's suggestion of "designating areas of interest when he tests based on agreement of the experts" is the type of test procedure that "*Mirchandani* seeks to prevent"; rather, "Defendant is entitled to know exactly what Plaintiff proposes to do and the reasons therefor, then have an expert analyze whether this procedure is appropriate".  *Id*.

Citing *Coffey v. Dowley Mfg., Inc.*, 187 F.Supp.2d 958, 964 (M.D. Tn. 2002), *Phillips v. Medtronic, Inc.*, 130 F.R.D. 136, 138 (D. Kan. 1990), and *Graff v. Baja Marine Corp.*, 310 F. Appx. 298 (11th Cir. 2009), Defendant maintains that Mr. Gashinski's "contention that his tests are based on the applicable ASTM standards does not change this analysis" as "Mr. Gashinski should be capable of citing the relevant portions of the applicable ASTM standards, detail those tests, and explain why the tests are the least destructive means of obtaining necessary evidence".  *Id*. at 11.  Defendant argues that Mr. Gashinski "cannot be presumed to correctly interpret ASTM standards or comply with their testing requirements".  *Id*.

In the alternative, Defendant requests that it "be permitted to conduct a limited deposition

of Mr. Gashinski to evaluate his need to test and his proposed methodology under the *Mirchandani* standard" and that supplemental briefing be allowed before ruling". *Id.* at 12.  Defendant claims that this will assist "both the litigants and the Court by developing a full and complete record of what Mr. Gashinski plans to do and why it is necessary"; thereafter, Defendant may determine that "it has no objection to testing" or may present "concrete evidence to justify preserving the evidence". *Id.*

### 3.   Plaintiff's Motion to compel more specific responses to Plaintiff's notice to produce should be denied.

Pursuant to FED. R. CIV. P. 26(b)(1) and *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000), Defendant argues that Plaintiff "must show that the information sought is relevant and may lead to admissible evidence" but has "not made this showing" here. *Id.* at 13.  Generally, Defendant maintains that due to Plaintiff's failure to file "a properly-pleaded motion", the Motion should be stricken so as to obviate the need for "Defendant and this Court" to "speculate what Plaintiff claims and why the information Plaintiff seeks is relevant and/or may lead to admissible evidence". *Id.*

With respect to document request numbers 4 and 10, Defendants points out that "Plaintiff admits that Defendant answered" these requests. *Id.*  Defendant contends that to the extent Plaintiff "desired reports of any expert that Defendant may offer as a witness at the time of trial, Plaintiff will suffer no prejudice as a result of his error" because Defendant must disclose this information in accordance with FED. R. CIV. P. 26(a)(2)(B). *Id.*  Defendant contends that to the extent Plaintiff "seeks information supplied to a testifying expert, this information cannot be supplied until a testifying expert is identified"; however, at that time "Plaintiff can...depose any testifying expert and have access to his or her entire file" pursuant to FED. R. CIV. P. 26(b)(4)(A). *Id.*  Defendant argues

that it "cannot determine whether it will have an expert testify at this juncture since Plaintiff has not designated or supplied a report from a testifying expert" and that Plaintiff must show "exceptional circumstances" in order to obtain "information in the possession of experts who have not been designated to testify" pursuant to FED. R. CIV. P. 26(b)(4)(B)(ii). *Id.* at 14. Defendant notes that it "advised Plaintiff to propound additional discovery requests if he desired further information", but that Plaintiff "simply chose not to do so". *Id.*

With respect to document request number 9, Defendant states that it "disclosed all correspondence between non-parties relating to the subject matter of this lawsuit". *Id.* Defendant notes, however, that all such correspondence was "between Defendant, its claims mangers, and its attorney", was "made in anticipation or defense of litigation", and "was not disclosed to others". *Id.* Citing FED. R. EVID. 501, *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 94 (3d Cir. 1992), and *Eisenberg v. Gagnon*, 766 F.2d 770, 787 (3d Cir.), *cert. denied*, 474 U.S. 946 (1985), Defendant argues that "these communications are protected by the joint defense privilege" and Plaintiff has offered "no explanation how any communications between Defendant and its litigation managers are discoverable in light of this privilege". *Id.* at 14-15. Defendant claims that Plaintiff's efforts in this regard are "simply an effort to harass Defendant into incurring unnecessary expenses". *Id.* at 14.

With respect to document request number 11, Defendant maintains that this request is unnecessary because it "acknowledges that it designed, manufactured, and sold the ladder". *Id.* at 16. Defendant argues that Plaintiff's "purported limitation...fundamentally changes what is requested...from asking who designed and manufactured the product to asking how that person or entity did so" and states that "it is Plaintiff's responsibility to propound a different request" if "Plaintiff wants different information than what he asked for". *Id.* Defendant notes that it "has made

15

available its design/assembly drawings" which "refer to additional drawings and documents"; to the extent Plaintiff seeks and identifies other specific documents, "the documents will be produced" if the request is not "unreasonably voluminous". *Id*. at 16-17.  However, Defendant contends that "if Plaintiff requests every document relating to every component of the ladder, ...the appropriate place for him to conduct that review is at Defendant's corporate offices" in Utah. *Id*. at 17.

With respect to document request number 16, Defendants maintains that it "was unreasonable and appropriately answered" as the referenced documents "fill a filing cabinet in Utah", were disclosed, and "have been available for review in Utah since April". *Id*.  Defendant notes that "in the absence of Plaintiff's expert report and/or a properly filed motion, Defendant must guess at Plaintiff's theory of liability, then select potentially relevant documents...based on its guess". *Id*. Defendant states that it "recently updated its initial disclosure to identify those documents which it believes may be relevant based on plaintiff's deposition testimony and Mr. Gashinski's submissions to date", and that these documents "are available for review at Defendant's attorney's office". *Id*. at 17-18.  Defendant argues that "there is no reason to believe that these documents will satisfy Plaintiff" as they are "still not all documents that reflect Defendant's drawings or manufacturing process"; Defendant maintains that those documents "are voluminous and can only be produced in Utah". *Id*. at 18.

**4.      Plaintiff's Motion to compel more specific answers to interrogatories should be denied.**

Defendant argues that Plaintiff "must show that the information sought is relevant and may lead to admissible evidence" but "has not done so" with respect to his application for more specific responses to interrogatories. *Id*.  Generally, Defendant maintains that due to Plaintiff's failure to file

"a properly-pleaded motion", the Motion should be stricken so as to obviate the need for "Defendant and this Court" to "speculate as to Plaintiff's claims". *Id.*

With respect to interrogatory number 4, Defendant states that it "properly objected to this interrogatory". *Id.* at 18-19.  Defendant points out that Plaintiff asked Defendant to "produce any statements it obtained" and asserts that "any statements obtained through discovery...are equally available to Plaintiff". *Id.* at 19.  Pursuant to FED. R. CIV. P. 26(b)(3)(A) and *Medford v. Duggan*, 323 N.J. Super. 127, 135-39 (App. Div. 1999), Defendant maintains that "any statements obtained in anticipation of litigation...are protected by the work-product doctrine", "to the extent that Defendant made statements to its attorneys...[they] are protected by the attorney-client privilege", and "to the extent Defendant made statements to its litigation managers...[they] are protected by joint defense privilege and the work-product doctrine". *Id.*

With respect to interrogatory number 7, Defendant notes that it has not designated an "expert witness" and cites FED. R. CIV. P. 26 for the proposition that "facts known to and opinions held by such an expert are not discoverable absent a showing of exceptional circumstances". *Id.* at 19-20. Defendant contends that "Plaintiff has not tried to show exceptional circumstances...and therefore...[has] no basis to compel production of these documents". *Id.* at 20.

With respect to interrogatory number 9, Defendant claims that its objection is proper as "Plaintiff has incorrectly represented his question in an attempt to gather additional information". *Id.*  Citing FED. R. CIV. P. 26(b)(3)(B), Defendant argues that "trial contentions necessarily require disclosure of the mental impressions, conclusions, opinions, or legal theories of Defendant's attorney and/or other representative" and maintains that "this information is absolutely protected under the work product doctrine". *Id.*

With respect to interrogatory number 11, Defendant claims that its objection is proper as "these documents are voluminous and are not capable of being readily produced" but that they "have been made available for review since Defendant served its initial disclosure". *Id.* Defendant claims that because Plaintiff never narrowed his allegations, Defendant "cannot narrow its response". *Id*.

With respect to interrogatory number 18, pursuant to *Barker v. Deere & Co.*, 60 F.3d 158, 162-63 (3d Cir. 1995) and FED. R. CIV. P. 26(b)(1), Defendant contends that Plaintiff must make a showing that "both the product and the accident scenario in the corresponding cases...[was] substantially similar" by way of "specific facts". *Id*. at 21. Defendant argues that "by not defining substantial similarity for either the product or its use" and by not supplying "enough information" to make a determination as to whether there is "similarity of product, defect, use and accident", "Plaintiff's request does not focus on the potentially relevant issues". *Id*. at 21-22. Defendant states that "if the request were limited to M26 aluminum ladders used in straight mode where there is an allegation of a failure in either a weld or the material strength", it would respond. *Id*. at 22.

With respect to interrogatory number 22, Defendant claims its objection was proper because it is " a repeat of interrogatory #18 while limiting the relevant time period to 10 years and limiting causation to latent defects in the welding and a collapse in the structural integrity for any cause". *Id*. Defendant argues that Plaintiff "has not focused on the facts necessary to show substantial similarity", "has not alleged a latent weld defect", and that "there is no evidence that a weld on Plaintiff's ladder failed". *Id*.

With respect to interrogatory number 23, Defendant states its objection was proper because "Plaintiff cannot require Defendant to create a document that does not exist" because "his expert wants one". *Id*. Defendant notes that even after it made clear that the information sought "could not

18

be reasonably supplied in the requested format", Plaintiff did not issue "a notice to depose...[any] representative [of Defendant]" and has not "inquired as to the manner in which this information could have been supplied". *Id*. at 22-23.  Defendant maintains that had Plaintiff asked, Defendant would have advised that the most appropriate format "was a deposition". *Id*. at 23.

> **5.**     **Assuming the Court strikes or denies Plaintiff's Motion, Defendant submits that Plaintiff's delay in seeking the discovery requested warrants no further extensions of discovery.**

Defendant notes that "by Order dated April 23, 2010, the Court established an October 29, 2010 fact discovery end date, and stated that there would be no extensions of this deadline without good cause." *Id*. at 23.  Pointing to Plaintiff's delay in propounding discovery, propounding too many interrogatories, waiting to correct deficiencies, failing to request an inspection of Defendant's available documents, failing to clarify or narrow objectionable requests, failing to supply an inspection protocol, and failing to notice Defendant's deposition, Defendant argues that "there can be no explanation for Plaintiff's delay" and requests that "Plaintiff be denied leave to conduct further fact discovery". *Id*. at 23-24.

> **6.**     **Assuming the Court affords Plaintiff additional time, Defendant requests that proceedings be bifurcated.**

Based upon the fact that Plaintiff "is still undergoing medical treatment", Defendant seeks "to expedite resolution of this matter...and to simplify issues for the jury" by requesting bifurcation pursuant to FED. R. CIV. P. 42(b) so that "liability issues" are tried first.  *Id*. at 24-26.  Defendant argues that "the facts on liability have not changed in the nearly 3 years since the accident" and "there is no basis for delaying this case". *Id*. at 25.  Specifically, Defendant maintains that extending medical discovery due to Plaintiff's continuing treatment "should not affect the timing of trial on the

liability issue". *Id*. at 25. Defendant notes that "liability issues cannot be resolved in this manner" because this case is a "no-pay". *Id*. at 25-26. Regarding bifurcation, Defendant states that allowing separation of liability and damages issues will result in "Plaintiff avoid[ing] any prejudice associated with his need for additional treatment...while Defendant will avoid any prejudice associated with any further delays" in addition to time and cost savings. *Id*. at 26.

## III.   DISCUSSION

### A.   Legal Standards

#### 1.   Destructive Testing

With respect to destructive testing, *Michandani v. Home Depot, U.S.A., Inc*., 235 F.R.D. 611 (D. Md. 2006) sets forth a four-pronged balancing test for purposes of determining whether such testing is appropriate under the circumstances. Specifically, the Court must weigh:

> (1) whether the proposed testing is reasonable, necessary, and relevant to proving the movant's case;
>
> (2) whether the non-movant's ability to present evidence at trial will be hindered, or whether the non-movant will be prejudiced in some other way;
>
> (3) whether there are any less prejudicial alternative methods of obtaining the evidence sought; and
>
> (4) whether there are adequate safeguards to minimize prejudice to the non-movant, particularly the non-movant's ability to present evidence at trial.

*Michandani*, 235 F.R.D. at 614. Importantly, "a party may not use destructive testing merely to bolster an expert opinion or to gain other potentially intriguing, albeit irrelevant, information...[as] the evidence sought must be integral to proving the movant's case and do more than strengthen an already established claim or defense." *Id* at 615. However, "while [a plaintiff] must show that the

20

evidence sought through destructive testing is necessary to prove [its] case (a more stringent standard than that applied to more routine discovery requests), the burden is not so high as to require definitive proof that [plaintiff's] hypothesis will provide correct". *Id.*  Indeed, "'when experts disagree on the relevancy of certain evidence, it would be unjust to select the view of one of those experts with the result that another party's discovery is thereby barred'". *Id.* (*citing Ostrander v. Cone Mills Corp.*, 119 F.R.D. 417, 420 (D. Minn. 1988)) The Court notes that "a material change in the appearance of the object [to be tested], even when the non-movant plans to present the object at trial, is insufficient to categorically prohibit destructive testing" and, therefore, the question is "whether the deprivation of the ability to make a live presentation to the jury...is enough to outweigh the benefits of providing [plaintiff] the ability to test...". *Id.* at 16.  Finally, with respect to safeguards, the Court is mindful of the possibilities that may be afforded to the non-movant:

> (1) adequate opportunities to photograph or otherwise record the character and condition of the object to be tested prior ot the destructive testing;

> (2) notice to the non-movants of the time, place, and exact manner of the destructive testing;

> (3) reasonable opportunity for the non-movant and its experts to observe and record the procedures involved in the destructive testing;

> (4) the right of the non-movant to conduct or participate in similar tests with a portion of the sample to be tested;

> (5) provision for discovery of the results of the movant's tests; and

> (6) allocation of costs as justice may require .

*Michandani*, 235 F.R.D. at 617.  The Court also notes that other courts have allowed non-movants to "videotape or photograph the destructive testing as they deemed appropriate...subject to a finding

that such recording unfairly compromised the testing", have granted non-movants "leave to depose the movant's experts about the testing procedures and results of the tests...[along with] the opportunity to show cause why any other persons substantially involved in the performance of the testing should also be deposed", and have imposed an affirmative duty on movants "to fully videotape each test from its inception to its conclusion". *Id*.

### 2. Discovery

FED. R. CIV. P. 7(b) states that "a request for a court order must be made by motion...(B) [that] states with particularity the grounds for seeking the order and (C) ...the relief sought". FED. R. CIV. P. 10 requires that pleadings include "a caption" and "claims or defenses in numbered paragraphs". *See also* L.CIV.R. 10.1.

FED. R. CIV. P. 34(a) states that "a party may serve on any other party a request within the scope of Rule 26(b): to produce and permit the requesting party or its representative to inspect, copy, test or sample the following items in the responding party's possession, custody, or control: (A) any designated documents or electronically stored information–including writings, recordings, images, and other data or data compilations–stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or (B) any designated tangible things".  It is well-settled that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense", although "relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence". FED. R. CIV. P. 26(b).  "Courts have construed this rule liberally, creating a broad range for discovery which would encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may

be in the case". *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000). "The party seeking discovery has the burden of showing that the information sought is relevant to the subject matter of the action and may lead to admissible evidence." *Id*.

"When a party withholds information otherwise discoverable under these rules by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed–and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim". FED. R. CIV. P. 26(5)(A); *see also* L.CIV.R. 33.1(c), 34.1, 36.1(b); *Caver*, 192 F.R.D. at 159. "These rules place the burden of demonstrating the precise manner in which a document is privileged upon the party claiming the privilege. A proper privilege log must include, for each withheld document, the date of the document, the name of its author, the name of its recipient, the names of all people given copies of the document, the subject of the document, and the privilege or privilege asserted. The Third Circuit has rejected broadside invocation of privilege which fails to designate with particularity the specific documents or file to which the claim of privilege applies". *Torres v. Kuzniasz*, 936 F. Supp. 1201, 1208 (D.N.J. 1996); *see also G-69 v. Degnan*, 130 F.R.D. 326, 331 (D.N.J. 1990), *Wei v. Bodner*, 127 F.R.D. 91, 96 (D.N.J. 1989), *United States v. O'Neill*, 619 F.2d 222, 225 (3d Cir. 1980).

### 3.      Bifurcation

Pursuant to Fed. R. Civ. P. 42(b), "for convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." The Court notes that "the decision to bifurcate vel non is a matter to be decided on a case-by-case basis...[and that] the party seeking bifurcation bears the

23

burden of showing that bifurcation is proper". *Wyeth v. Abbott Labs.*, 2010 U.S. Dist. LEXIS 116921, at *2 (D.N.J. 2010); *see also Lis v. Robert Packer Hosp.*, 579 F.2d 819, 824 (3d Cir. 1978), *Rodin Properties-Shore Mall, N.V. v. Cushman & Wakefield of Pennsylvania, Inc.*, 49 F. Supp. 2d 709, 721 (D.N.J. 1999).  Importantly, "a district court is given broad discretion in reaching its decision whether to separate issues of liability and damages".  *Id.*; *see also Idzojtic v. Pennsylvania Railroad Co.*, 456 F.2d 1228, 1230 (3d Cir. 1972).  When considering whether to bifurcate, "courts should consider whether (a) there will be overlap in testimony and evidence between the two proceedings, (b) the issues to be decided at trial are complex and the factfinder is likely to become confused, (c) bifurcation will promote settlement, and (d) a single trial will cause unnecessary delay".  *Id.*; *see also Viking Yacht Co. v. Composites One LLC*, 2008 U.S. Dist. LEXIS 101594, 2008 WL 5244411, at *2 (D.N.J. 2008)(*citing Rodin Properties-Shore Mall*, 49 F. Supp. 2d at 721).

      **B.**      **Plaintiff's Motion**

      With respect to Plaintiff's Motion, it should be noted at the outset that the Court declines Defendant's request to strike Plaintiff's Motion in its entirety due to deficiencies in Plaintiff's moving papers.  While a review of the Motion papers in tandem with certifications and exhibits attached therewith demonstrates a certain lack of attention to detail, the Court will consider this matter substantively in order to expedite a timely resolution of the issues presented.

      With respect to Plaintiff's application to permit destructive testing, the Court finds that Mr. Gashinski's letters dated July 27, 2009 (*see* dkt. entry no. 8, Ex. F) and September 8, 2010 *(see* dkt. entry no. 8, Ex. I) set forth sufficient facts to warrant such testing.  Specifically, Mr. Gashinski states that "the root cause of failure cannot be determined at this time without performing a comprehensive metallurgical evaluation and review of the manufacturing process" and sets forth "a test protocol for

the destructive testing of the subject ladder" in his July 27, 2009 letter.  *See* dkt. entry no. 8, Ex. F.

Mr. Gashinski goes on to state that the steps set forth in his protocol "are typical for failure analysis

and are widely accepted as industry standard and practice".  *See* dkt. entry no. 8, Ex. I.  The Court

finds that, given Mr. Gashinski's preliminary opinion and Defendant's failure to proffer any

opposing expert opinion, destructive testing is reasonable, necessary, and relevant and there are no

other less prejudicial alternatives for obtaining the evidence sought.  However, the Court seeks to

address Defendant's concerns as set forth in its request for a limited deposition of Mr. Gashinski.

In order to ensure that the other factors set forth in *Michandani* – prejudice to Defendant and

adequate safeguards – are fully acknowledged and accounted for with respect to the subject ladder,

the Court directs the parties and their experts, if any, to meet and confer with respect to establishing

an agreed-upon framework, implementing adequate safeguards, to minimize any prejudice to

Defendant.  While not an exhaustive list, the Court directs the parties to the criteria set forth in

*Michandani* when developing this framework.  Upon execution and filing of a stipulated consent

order setting forth the testing protocol and safeguards, Plaintiff may engage in destructive testing.

With respect to Plaintiff's application for production of documents, the Court finds as

follows:

> #4 – Plaintiff admits a typographical error in his original request.
> Defendant has represented that it has not identified an expert at this
> time.  Plaintiff has failed to demonstrate any "exceptional
> circumstances" as set forth in Rule 26(b)(4)(B)(ii). Should Defendant
> decide that it may utilize an expert at trial, Defendant is directed to
> promptly comply with Rule 26(a)(2) and thereby provide Plaintiff a
> response to his "cured" request (as set forth in Plaintiff's letter to
> Defendant dated August 23, 2010 requesting discovery in
> Defendant's possession) within the period set forth in Rule
> 26(a)(2)(C) by forwarding any/all relevant discovery.

#9 – Defendant has asserted a privilege precluding Plaintiff's discovery of the requested material.  Defendant is directed to promptly comply with Rule 26(b)(5), including provision to Plaintiff of a privilege log that conforms with the dictates set forth in *Torres v. Kuzniasz*, 936 F. Supp. 1201, 1208 (D.N.J. 1996).

#10 – Plaintiff admits a typographical error in his original request.  Defendant has represented that it does not possess any documents related to this request.  Defendant is directed to promptly provide Plaintiff a response to his "cured" request (as set forth in Plaintiff's letter to Defendant dated August 23, 2010 requesting discovery in Defendant's possession) by forwarding any/all relevant discovery.

#11 – Plaintiff admits narrowing/clarifying his request (as set forth in Plaintiff's letter to Defendant dated August 23, 2010) to only include "any and all documents [reflecting] how the Little Giant Ladder System Type 1A with Model No. 10126 is manufactured and designed". [dkt. entry no. 8, Ex. K] The Court directs Defendant to promptly review and respond to this narrowed/clarified request by forwarding any/all responsive discovery.

#16 – Plaintiff's request is highly relevant to this lawsuit.  The Court directs Defendant to promptly review and respond to this request by forwarding any/all responsive discovery and, based upon Plaintiff's offer to do so, directs Plaintiff to reimburse Defendant's reasonable copying costs.

With respect to Plaintiff's application for answers to interrogatories, the Court finds as

follows:

#4 – Defendant has failed to provide a responsive answer and has asserted a privilege precluding Plaintiff's discovery of the requested material.  Defendant is directed to promptly comply with Rule 26(b)(5), including provision to Plaintiff of a privilege log that conforms with the dictates set forth in *Torres v. Kuzniasz*, 936 F. Supp. 1201, 1208 (D.N.J. 1996).

#7 – Defendant has indicated that its consulting expert took photographs in anticipation of litigation or for trial preparation.  Plaintiff has failed to meet its burden to compel this type of discovery under Rule 26(b)(3) and/or Rule 26(b)(4), and, therefore, is not entitled to the discovery requested at this time.  Should Defendant

decide that it may utilize an expert at trial, Defendant is directed to promptly comply with Rule 26(a)(2) within the period set forth in Rule 26(a)(2)(C) by forwarding any/all relevant discovery.

#9 – The Court finds that Plaintiff's request may be relevant. However, Plaintiff has failed to meet his burden to compel this type of discovery under Rule 26(b)(3) due in part to Defendant's deficient response. Although Defendant's assertion of a privilege may be applicable, it has failed to comply with the requirements of Rule 26(b)(5). Defendant is directed to promptly comply with Rule 26(b)(5), including provision to Plaintiff of a privilege log that conforms with the dictates set forth in *Torres v. Kuzniasz*, 936 F. Supp. 1201, 1208 (D.N.J. 1996).

#11 – The Court finds Plaintiff's request to be overly broad and vague, especially in light of the fact that no "definitions" section was provided with the interrogatories forwarded to Defendant. However, Defendant admits that it identified documents and made them available for Plaintiff's review. The Court directs Defendant to promptly review and respond to this request by forwarding any/all responsive discovery that it previously identified.

#18 – The Court finds Plaintiff's request, while perhaps inartfully drafted, to be both relevant and readily apparent in the context of this matter. As set forth in Rule 26(b)(1), "relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence". The Court directs Defendant to promptly review and respond to this request by forwarding any/all responsive discovery.

#22 – The Court finds Plaintiff's request, while perhaps inartfully drafted, to be both relevant and readily apparent in the context of this matter. As set forth in Rule 26(b)(1), "relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence". The Court directs Defendant to promptly review and respond to this request by forwarding any/all responsive discovery.

#23 – Defendant has represented that a flow chart does not exist. The Court finds Plaintiff's request, while perhaps inartfully drafted, to be both relevant and readily apparent in the context of this matter. As set forth in Rule 26(b)(1), "relevant information need not be admissible at trial if the discovery appears reasonably calculated to

lead to the discovery of admissible evidence". The Court directs Defendant to promptly review and respond to this request by forwarding any/all responsive discovery.

With respect to Plaintiff's application for a copy of Defendant's insurance policy, pursuant to Rule 26(a)(1)(iv) the Court directs Defendant to promptly forward a copy of its insurance policy to Plaintiff.

### C.    Defendant's Cross-Motion

With respect to Defendant's Cross-Motion, the Court finds that Defendant has failed to meet its burden with respect to demonstrating that bifurcation will increase convenience, aid in avoiding prejudice, or expedite and economize this matter. Given the nature of Plaintiff's slip and fall allegations related to use of the subject ladder, and the nature and extent of Plaintiff's alleged injuries, the Court finds it to be self-evident that the issues are not sufficiently complex and that bifurcation will not promote settlement. Further, given the Court's findings with respect to Plaintiff's Motion, the Court finds that ordering separate trials at this time may well cause further delay in concluding discovery and setting a trial date.

## IV.    CONCLUSION AND ORDER

The Court having considered the papers submitted and opposition thereto, and for the reasons set forth above;

**IT IS** on this 16th day of November, 2010

**ORDERED** that Plaintiff's Motion to compel [dkt. entry no. 11] is **GRANTED** in part and **DENIED** in part consistent with the findings set forth above; and it is further

**ORDERED** that Defendant's Cross-Motion to bifurcate and conduct a limited deposition of Mr. Gashinski [dkt. entry no. 15] is **DENIED**; and it is further

**ORDERED** that the parties shall provide the Court with a stipulated consent order regarding a framework for adequate safeguards for destructive testing by **December 1, 2010**, that Defendant shall provide Plaintiff with the discovery compelled above by **December 15, 2010**, that fact discovery in this matter shall remain open until **January 18, 2011** for the limited purpose of destructive testing, and that a telephone conference call will be held to set the remaining schedule in this matter.

s/ *Douglas E. Arpert*
**DOUGLAS E. ARPERT**
**UNITED STATES MAGISTRATE JUDGE**