UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SEAN GLENNON, | : | Civil Action No.: 10-0324 (JAP) |
| Plaintiff, | : | |
| v. | : | ORDER |
| WING ENTERPRISES, INC., et al., | : | |
| Defendants. | : | |

This matter having come before the Court on Motion by Plaintiff Sean Glennon ("Plaintiff") to re-open discovery and adjourn the Final Pretrial Conference [dkt. entry no. 30], returnable November 21, 2011; and Defendant Wing Enterprises ("Defendant") having filed opposition; and Plaintiff noting that he alleges that "he sustained serious personal injuries as a result of a ladder manufactured by Defendant failing on December 14, 2007" (Pl.'s Br., dkt. entry no. 30-1 at 1); and Plaintiff stating that after the accident, he "consulted with Dr. Choi of Somerset Orthopedics", that Dr. Choi "prescribed physical therapy for [Plaintiff's] lower back complaint", and that Plaintiff "had thirty-eight physical therapy visits with Belle Meade Physical Therapy" starting on March 12, 2008 (*Id*. at 2); and Plaintiff stating that "[d]uring the time he received physical therapy, [he] continue[d] to consult and treat with Somerset Orthopedics", had "a series of seven epidural injections", was diagnosed as having sustained "an annular tear at L4-5", and was informed that he was "a candidate for future surgical intervention" in September 2010 (*Id*.); and Plaintiff stating that treatment notes and reports from February, June, July, and September 2011 indicate that Plaintiff's doctors contemplated, and then recommended, that Plaintiff undergo an "IDET surgical procedure and interbody fusion" based, in part, on a discography performed in July 2011 which "revealed two annular tears at L4-5 and L5-1" and the conclusion that Plaintiff had "sustained a permanent injury to his lower back" (*Id*. at 3); and Plaintiff noting that "[a]ll of the medical reports referenced were

served within the discovery period or through agreement by counsel with the assistance of [the] Court" (*Id*.); and Plaintiff maintaining that since the parties went to arbitration on September 7, 2011, he "sought a second opinion" related to the recommendation that he undergo "the IDET Procedure" and Dr. Lutz issued a report on September 28, 2011 "finding that [Plaintiff] ha[d] an internally disrupted disc at L4-5 and...chronic disabling pain as a result of his...fall" and "recommended that [Plaintiff] consider a L4-5 IDET procedure" (*Id*. at 3-4); and Plaintiff stating that "[a]s a result of [Dr. Lutz's] recommendation, [he] has scheduled the surgical procedure...for December 6, 2011" and therefore requests leave "to reopen discovery to permit the serving of Dr. Lutz's report and the associated medical records and reports stemming from [Plaintiff's] upcoming surgical procedure" (*Id*. at 4); and Plaintiff, citing *Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3d Cir. 1986), *Pastore v. Bell Tel. Co.*, 24 F.3d 508, 511 (3d Cir. 1994), *Spring Creek Holding Co. v. Keith*, 2006 WL 2403958, at *3 (D.N.J. 2006), maintains that "in order to reopen discovery after a case management order has been set, a party needs to demonstrate good cause", "must demonstrate that it could not have met the original scheduling deadline", and must satisfy all of the following conditions – "(1) identify the particular information sought, (2) show how the information would preclude summary judgment, and (3) explain why it was not previously obtained" (*Id*. at 4, 6); and Plaintiff arguing that he has "met [his] burden because the information giving rise to the request for the reopening of discovery was not available until discovery had already closed" (*Id*. at 6); and Plaintiff arguing that he seeks "to reopen discovery to permit a fact finder to hear that [his] upcoming surgical procedure is related to the ladder's collapse" based upon the discogram, Dr. Choi's opinion, and Dr. Lutz's second opinion (*Id*. at 4-5); and Plaintiff arguing that the second factor "does not apply because this application is not submitted in response to a motion for summary judgment" (*Id*. at 5); and Plaintiff arguing that the pertinent discovery "was not previously obtained because it was

2

the result of a...recent diagnostic procedure...that led to the recommendation of the IDET procedure" and Dr. Lutz's second opinion (*Id.*); and Plaintiff maintaining that he "does not anticipate naming Dr. Lutz as an expert witness...but will forward Dr. Lutz's September 28, 2011 report and the records associated with the surgery to [his previously designated expert] for comment" (*Id.*) and Plaintiff stating that he has "scheduled the surgery for December 6, 2011" such that "any trial date will not be extensively delayed" and "the Final Pretrial Conference can be rescheduled to January" (*Id.*); and in opposition, Defendant contending that "[t]his is a case where [it] should not be forced to bear any further prejudicial delay from Plaintiff's belated choice to have surgery that was first discussed before this suit was filed" in November...2009 and again "in September and October...2010" (Def.'s Opp'n Br., dkt. entry no. 31-9 at 1); and Defendant noting that these "discussions preceded Plaintiff's initial expert report deadline of November 30, 2010", a deadline which "was extended twice before Plaintiff served any report" and that said report "made no mention of surgery" such that Defendant "had every right to assume that it was trying a case involving a non-surgical injury" (*Id.*); and Defendant further noting that "Plaintiff served a supplemental damages expert report which again made no mention of any surgery being necessary or scheduled" after "two more amended scheduling orders were entered...and as expert discovery was being concluded" and that Defendant withdrew its initial objection to this supplemental report "because Plaintiff consented to an independent medical examination based on new test results...[and] a schedule that would not adversely impact the timely resolution of [this] case" (*Id.*); and Defendant, maintaining that Plaintiff's request comes "four years post-accident, nearly two years into suit, and nearly three months after Plaintiff's last untimely amendment to his damages proofs", argues that Plaintiff's "request is improper and will lead to a miscarriage of justice" because "it will require [Defendant] to further delay this matter in order to await the surgical outcome, re-depose Plaintiff on his

3

condition, and obtain a post-surgery medical evaluation" (*Id*. at 2); and Defendant arguing that "[a]llowing Plaintiff to delay this matter further in order to have surgery that was discussed before suit was filed will have the same prejudicial impact...[as] if Plaintiff had deliberately waited two years to release critical information" and will "unnecessarily delay the completion of this matter at a cost in money and time that [Defendant] has diligently fought to minimize" (*Id*.); and Defendant, citing *Eichorn v. AT&T Corp.*, 484 F.3d 644, 650-51 (3d Cir. 2007), *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904 (3d Cir. 1977), and *Goodman v. Lukens Steel*, 777 F.2d 113 (3d Cir. 1985), *aff'd*, 482 U.S. 656 (1987), notes that "the decision as to whether to allow new experts and opinions after the close of discovery and/or after a deadline in a scheduling order is judged by an abuse of discretion standard" based on "(1) the prejudice or surprise to the opposing party", "(2) the ability of the offering party to cure the prejudice", "(3) the extent to which allowing the testimony would disrupt the orderly and efficient trial of...[the] case and other cases", and "(4) bad faith or willfulness in failing to comply with the Court's order" (*Id*. at 2-3); and Defendant arguing that "there will be prejudice...from any delay that results due to Plaintiff's belated surgical decision...and that Plaintiff could have cured this prejudice by adhering to...[the] Court's scheduling orders" (*Id*. at 3-4); and Defendant, noting that "[a]fter four extensions of this deadline, the submission of two expert reports, and at least two additional discussions of his surgical options, discovery closed without Plaintiff having surgery and without any disclosure that Plaintiff was seeking a second opinion, contemplating having the surgery, or would be further updating his discovery with regard to his medical condition", argues that "[t]his information is clearly a surprise to [Defendant]...and would warrant the denial of Plaintiff's motion without other considerations" (*Id*. at 4); and Defendant, maintaining that "if Plaintiff has surgery...and that surgery is considered as an element of Plaintiff's case, [Defendant] will need to (1) await Plaintiff's surgical outcome, (2) re-

4

depose Plaintiff as to his post-surgical condition, (3) obtain all records associated with Plaintiff's surgery...including pre- and post-surgical treatment and any resulting physical therapy, (4) obtain a follow up medical examination/medical record review, and (5) undertake any additional activities shown to be necessary through these efforts", argues that "these considerations present grounds for denying a late discovery amendment as prejudicial" pursuant to *Ajax Enterprises v. Fay*, 2007 WL 1456201, at *3 (D.N.J. 2007) (*Id*. at 4-5); and Defendant, citing *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719-21 (3d Cir. 1997), argues that "where...a party declines to pursue known treatment options during the discovery period and fails to make known any reason for his delay in treatment", "that failure...[should be] regarded as a flagrant violation of the Court's discovery orders" and "operate to deny a late discovery amendment" (*Id*. at 5-6); and Defendant, noting that an arbitration has been conducted, a Final Pretrial Conference is scheduled, and all discovery has been completed, argues that "[t]o allow this process to be slowed because Plaintiff has...[now] elected to pursue treatment that was made known to him before suit was filed would be allow justice to be delayed for no legitimate purpose" (*Id*. at 5); and Defendant contending that "had Plaintiff timely alerted his adversary to his consideration of surgery, his efforts to obtain a second opinion, and other information relating to his treatment, this lawsuit could have been conducted without disruption and the associated increase in cost" (*Id*. at 6); and the Court noting that pursuant to FED. R. CIV. P. 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent"; and the Court noting that "[a] determination of good cause depends on the diligence of the moving party" where "[t]he moving party has the burden of demonstrating that despite its diligence, it could not reasonably have met the scheduling order deadline" (*Spring Creek Holding Co. v. Keith*, 2006 WL 2403958, at *3 (D.N.J. 2006); *see also GlobespanVirata, Inc. v. Texas Instruments, Inc.*, 2005 WL 1638136, at *3 (D.N.J. 2005); *Hutchins v. United Parcel Service, Inc.*, 2005 WL 1793695, at *3

(D.N.J. 2005)); and the Court noting that "the lack of prejudice to the nonmovant does not show 'good cause'" (*GlobespanVirata*, 2005 WL 1638136, at *3; *see also Deghand v. Wal-Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan. 1995)); and the Court noting generally that "the factors to be considered in resolving" whether to re-open discovery are whether there was "bad faith on the part of the party seeking to call witnesses not listed in...[a] pretrial memorandum", the "ability of the party to have discovered the witnesses earlier", the "validity of the excuse offered by the party", the "willfulness of the party's failure to comply with the court's order", "the parties' intent to mislead or confuse his adversary", "and...the importance of the excluded testimony" (*Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977)); and the Court noting that "exclusion of critical evidence is an extreme sanction...not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence" (*Id.* at 905; *see also Dudley v. South Jersey Metal, Inc.*, 555 F.2d 96, 99 (3d Cir. 1977)); and the Court noting when determining "if withheld evidence should be excluded", factors that have been considered include "(1) the importance of the information withheld[,] (2) the prejudice or surprise to the party against when the evidence is offered[,] (3) the likelihood of disruption at trial[,] (4) the possibility of curing the prejudice[,] (5) the explanation for the failure to disclose[,] and (6) the presence of bad faith or willfulness in not disclosing the evidence" (*Ajax Enterprises v. Fay*, 2007 WL 1456201, at *2 (D.N.J. 2007); *see also Pfizer, Inc. v. Teva Pharmaceuticals USA, Inc.*, 2006 WL 2938723, at *3-4 (D.N.J. 2006)); and the Court noting that "[t]he burden of establishing substantial justification and harmlessness is on the party that failed to make the required disclosure" (*Id.*; *see also M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc.*, 2007 WL 979854, at *12 (D.N.J. 2007); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001)); and the Court noting that a Final Pretrial Conference is scheduled for November 30, 2011 (*see* dkt. entry no.

28) but that a trial date has not been set; and the Court noting that medical records produced by Plaintiff indicate that he was diagnosed with a "lumbar annular tear" and wished to continue with a non-operative course of therapy as of March 12, 2010 (*see* Pl.'s Cert. of Peter Cipparulo ("Cipparulo"), dkt. entry no. 30-2, Ex. D), that "discography analysis" and "surgical intervention" were discussed but Plaintiff wished to continue with a non-operative course of therapy as of September 18, 2010 (*Id.*), that Plaintiff underwent a MRI study on September 25, 2010 which demonstrated results "similar to the previous study" of January 26, 2008 (*Id.*), that "discography", "intradiscal procedures", and "interbody fusion" were discussed but Plaintiff wished to continue with a non-operative course of therapy and "epidural injections" as of March 22, 2011 (*Id.*), that Plaintiff underwent a "discographic analysis" on July 15, 2011 which demonstrated "grade 2 annular degeneration and grade 2 disruption[s]" of L3-L4, L4-L5, and L5-S1 (*Id.*), that Plaintiff obtained a second opinion from Gregory E. Lutz, M.D. ("Dr. Lutz") on September 28, 2011 indicating that Plaintiff's "symptoms [were] consistent with internally disrupted disc at L4-5", that Plaintiff "has had chronic disabling pain as a result of his traumatic fall from the ladder", and recommending that Plaintiff "consider L4-5 IDET procedure as...[a] treatment option to treat his [lumbar] discogenic pain" (*Id.* at Ex. H), and that Plaintiff has scheduled an IDET procedure for December 6, 2011 (*Id.*); and the Court finding that information related to Plaintiff's "second opinion" from Dr. Lutz and the IDET procedure/results are important to the ultimate disposition of this matter, that Defendant was – or should have been – aware that surgical intervention was a possibility based on information produced by Plaintiff during discovery and therefore should not be surprised (*see* Pl.'s Cert. of Cipparulo at Ex. D), that any prejudice to Defendant is minimal given that any prejudice may be cured by adjourning the Final Pretrial Conference and re-opening discovery to allow Defendant to engage in additional factual/expert discovery related to Dr. Lutz's second opinion and the IDET

procedure (*see* Def.'s Opp'n Br. at 4-5) and Plaintiff's representation that any delay will be minimal given that the Final Pretrial Conference may be rescheduled as early as January 2012 (*see* Pl.'s Br. at 5), and that Plaintiff has demonstrated that his request is not made in bad faith or that his delay was willful based upon the medical history and course of treatment set forth above (*Id*. at 1-5; *see also* Pl.'s Cert. of Cipparulo at Exhs. A-H); and the Court finding that Plaintiff has demonstrated good cause and established substantial justification and harmlessness for adjourning the Final Pretrial Conference and re-opening discovery (*see Ajax*, 2007 WL 1456201, at *2; *see also Meyers*, 559 F.2d at 904-05); and the Court having reviewed the parties' written submissions; and the Court having considered the matter pursuant to FED. R. CIV. P. 78; and for the reasons stated above;

**IT IS** on this 17th day of November, 2011,

**ORDERED** that Plaintiff's Motion to re-open discovery and adjourn the Final Pretrial Conference [dkt. entry no. 30] is **GRANTED**; and it is further

**ORDERED** that the Final Pretrial Conference scheduled for **November 30, 2011** is adjourned; and it is further

**ORDERED** that the Court will set a new schedule resetting discovery deadlines and rescheduling the Final Pretrial Conference during a telephone status conference, to be initiated by Plaintiff's counsel, on **December 9, 2011** at **10:00 a.m.**

s/ *Douglas E. Arpert*
**DOUGLAS E. ARPERT**
**UNITED STATES MAGISTRATE JUDGE**
